David A. Zelman, Esq.
612 Eastern Parkway
Brooklyn, New York 11225
718 604 3072

December 8, 2007

Via ECF and Mail
Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: Camacho v. the City of New York et. al.**
**Docket #: 07 CV 5581 (SHS)**

Dear Judge Stein:

Please accept this letter in opposition to defense counsel's motion for partial summary judgment dismissing plaintiff's State and Federal false arrest claims.

Defense counsel claims that because plaintiff pled guilty to an uncharged non criminal violation, his arrest for "Criminal Possession of a Controlled Substance in the Seventh Degree" (PL 220.03) is privileged. For the following reasons, this Court should allow the issue of whether there was probable cause to arrest proceed to the jury with the remaining claims, i.e. excessive force, etc. Defense counsel seeks to propose a per se rule that any plea to any offense bars a false arrest claim. This per se rule should be rejected by this Court and a case by case approach should be adopted to analyze the issue of whether there was probable cause to place plaintiff in custody at the time of the arrest.

### The Facts

In this matter, the plaintiff was arrested for a drug offense as mentioned above. (See Exhibit A). There was no allegation in the criminal matter that the plaintiff committed the misdemeanor of Disorderly Conduct. In fact, the criminal court complaint states that "the informant observed the defendant in possession of heroin which informant recovered from the ground where informant observed defendant drop it." (See Exhibit A). The informant is a named defendant, Mr. John Bartek. Other police records indicate that plaintiff "was observed exchanging a sum of usc for quantity of heroin from a apprehended dealer in public view during a snue operation." (Exhibit B)

Plaintiff claims excessive force and false arrest in this matter. While the force used by the defendants is at issue in this case, the fact that the plaintiff was hospitalized following his

arrest, from October 12 to October 27 is a matter of record. On October 27, criminal defense counsel made mention of plaintiff's fractured vertebrae which required hospitalization and thereafter, plaintiff pled guilty to a violation, Disorderly Conduct and was released. There was no plea allocution and there are no facts in the record as to how or when the plaintiff committed the violation of disorderly conduct. (Exhibit C is the minutes of the October 27 hearing before the Criminal Court.) The Court took pains to repeat twice to plaintiff that he was pleading guilty to a violation and not a crime. Other than taking the plea, the only thing said by the defendant was "Oh my God. I'll not be able to take the pain."(Minutes, Page 2). Plaintiff was sentenced to "lead a law abiding life" and released. (Minutes, Page 4).

### The Applicable Law

"When determining whether probable cause exists courts "must consider those facts available to the officer at the time of the arrest and immediately before it." _Lowth v. Town of Cheektowaga_, 82 F.3d 563, 569 (2d Cir. 1996); _see Anderson_, 483 U.S. at 641 ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." _Weyant_, 101 F.3d at 852 (citing _Dunaway v. New York_, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979)). A district court must look to the "totality of the circumstances" in deciding whether probable cause exists to effect an arrest. _Illinois v. Gates_, 462 U.S. 213, 233, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); _Bernard v. United States_, 25 F.3d 98, 102 (2d Cir. 1994). In looking to the totality of the circumstances, courts must be aware that "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." _Gates_, 462 U.S. at 232."

Caldarola v. Calabrese, 298 F.3d 162 (2nd Cir., 2002).

Defense counsel argues that because plaintiff pled guilty to an uncharged violation of disorderly conduct, probable cause to arrest is established. However, when this argument is applied to this matter, it provides the Court with no insight into how probable cause to arrest existed in this case. Plaintiff was allegedly arrested for possession of narcotics or alternatively, purchasing narcotics and dropping it on the ground. The violation of disorderly conduct requires "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof..." It is simply illogical that a person purchasing narcotics would have an intent to create a public disturbance. Nor are there any facts in the police records or court records supporting the conclusion that plaintiff acted in any way disorderly. It should be noted by the Court that the plaintiff alleges in this case that the possession charge was dismissed because the police

submitted false police reports which could never result in a conviction. The District Attorney's office agreed to dismiss the narcotics charge at its first opportunity.

There is no evidence in the record as to when or where plaintiff acted disorderly. This issue has prevented other Courts from ruling that a guilty plea bars a false arrest claim. See, Murray v. Williams, 2007 U.S. Dist. LEXIS 11321, (SDNY, 2007). This issue is especially acute in this matter where plaintiff was in custody for approximately two weeks before he was released. It is simply unknowable on this record if the disorderly conduct was committed at the scene of the arrest or at any other time during plaintiff's two week incarceration.

A similar situation was presented in Unger v. Cohen, 718 F. Supp. 185, (SDNY, 1989). In Unger, the plaintiff pled guilty to disorderly conduct but was arrested for "failing to obey an officer's order to move a car." Judge Kram ruled that the conviction would not bar plaintiff's false arrest claims and plaintiff would not be required to exhaust state remedies because:

> From the record before the Court, it appears that counsel did not discuss the charges in detail nor the circumstances of plaintiff's arrest. The record does not indicate an admission of factual guilt on Unger's part; Unger's counsel merely informed the court after the side bar conference that her client intended to plead guilty. It is fairly evident that counsel was able to negotiate a conditional discharge for Unger, but absent some indication that Unger knew he was admitting wrongdoing, the Court believes it manifestly unfair to assume that he understood the consequences of the plea. Although Unger may have known that by allowing his attorney to enter a guilty plea he was in fact admitting his own criminal conduct, it is equally possible that he had no real idea what was happening and only understood that his appointed counsel was arranging for him to leave jail and not have to return.

Id. at 14.

This analysis is all the more relevant in this case where the only spoken words by the plaintiff, other than "Yes" or "No"at the Court conference were, "Oh my God. I'll not be able to take the pain." No inquiry was made by the Court or counsel, on the record as to why plaintiff was in pain or whether the pain he was experiencing could affect his ability to take a plea. It also appears from the record that defense counsel was attempting to secure plaintiff's freedom when she said, "He broke a vertebrae and that's why he was in the hospital for all of this time and I would not like for him to spend another night in there." (Minutes, Page 2). While an argument may be made that plaintiff is now attacking the validity of the plea, this argument is meritless. The plaintiff maintains, as the Unger court held, that the plea is no bar to a false arrest claim because it does not support the conclusion that there was probable cause to arrest.

Lastly, in Covington v. City of New York, 171 F.3d 117, (2nd Cir., 1999), the plaintiff was arrested for stealing cases of wine. The underlying criminal matter was dismissed when the

prosecutor failed to timely proceed. The ensuing civil rights case was dismissed by the District Court on timeliness grounds. The Second Circuit reversed and held:

> Although in <u>Woods</u>, the plaintiff's claims in fact rested on the same grounds as the reversal of his conviction in the criminal proceedings, we note that this result is not inevitable in cases involving § 1983 claims based on an unlawful arrest. See <u>Washington v. Summerville</u>, 127 F.3d 552, 556 (7th Cir. 1997) ("[A] wrongful arrest claim, like many <u>Fourth Amendment</u> claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction."). Such a case might arise if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest. On the other hand, in a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence. In the present case, we are unable to determine whether success on Covington's <u>Section 1983</u> false arrest claim would necessarily imply the invalidity of a possible conviction resulting from the criminal proceedings instituted against him based on that arrest, as we have no information before us as to the nature of the evidence which might have been available against him in those proceedings. Accordingly, we remand the case to the district court to make this determination.

<u>Covington</u> at 16.

The Second Circuit therefore points out that a vital element of the Court's analysis is what evidence is available which implicates the plaintiff. Here, as defense counsel has presented no facts as to how, when or where plaintiff acted disorderly, this Court is not in a position to rule that plaintiff's plea to disorderly conduct would undermine his claim that there was no probable cause to arrest.

For all of the foregoing reasons, plaintiff's plea to disorderly conduct should be no bar to his false arrest claim and this Court should deny defendant's motion for partial summary judgment.

Thank-you for your consideration.

Very Truly Yours:

David A. Zelman, Esq.
Attorney for the Plaintiff

Page -4-

To:    *Via Fax: 212 788 9776*
        Michael Chestnov, Esq.
        Attorney for the Defendant
        CITY OF NEW YORK
        100 Church Street
        New York, NY 10007

EXHIBIT A

Crimmai Cou...

Part APAR      County of Kings

THE PEOPLE OF THE STATE OF NEW YORK

V.

State of New York
County of Kings

FRANCISC CAMACHO

_____ Defendant

Police Officer Blaine Hennig, shield number 15888, says that on or about October 11, 2006 at approximately 12:40 PM at DEKALB AVENUE AND KNICKERBOCKER AVENUE - BROOKLYN, NEW YORK, County of Kings, State of New York,
the defendant committed the offense of:

PL 220.03      CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE SEVENTH DEGREE

in that the defendant did:
KNOWINGLY AND UNLAWFULLY POSSESS A CONTROLLED SUBSTANCE.

The source of deponent's information and the ground for deponent's belief are as follows:

The deponent is informed by the sworn statement of Police Officer  John Bartek, shield number 29956 that, at the above time and place, the informant observed the defendant in possession of a quantity of heroin which informant recovered from the ground where informant observed defendant drop it.

The deponent is informed by the sworn statement of informant that informant has had professional training as a police officer in the identification of heroin, has previously made arrests for the criminal possession of heroin, has previously seized heroin that was determined to be such by the Police Department Laboratory and the heroin in this case possesses the same physical characteristics as the previously chemically identified heroin, by professional training as a police officer familiar with the common methods of packaging heroin and the glassine envelope used to package the heroin in this case is a commonly used method of packaging heroin. Based upon the foregoing, in informant's opinion, the substance in this case is heroin.

False statement made in this document are punishable
as a class a misdemeanor pursuant to section 210.45 of the Penal Law.

October 12 2006

2006KN074858

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Printed:  10/12/06  5:48

EXHIBIT B



New York City Police Department
## Omniform System - Arrests

**RECORD STATUS: ARR PRC CMPL**

Arrest ID: K06683249 - H

**Arrest Location:** NORTH EAST CORNERKNICKERBOCKER AVENUE & DE KALB AVENUE

Pct: 083

**Arrest Date:** 10-11-2006    Processing Type: ON LINE
**Time:** 12:40:00    DCJS Fax Number: KO074823
Sector: J    Special Event Code: -
    DAT Number: 0
Stop And Frisk: NO    Return Date: 0000-00-00
Serial #: 0000-000-00000

**COMPLAINTS:**    Arrest #: K06683249

| COMPLAINT NUMBER | REPORT DATE | RECORD STATUS | OCCUR DATE | OCCUR TIME |
|---|---|---|---|---|
| 2006-083-08109 | 2006-10-11 | Reserved # for Arrest | 2006-10-11 | 12:40 |

**CHARGES:**    Arrest #: K06683249

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 220.03 | M | A | 1 | CRIM POSS CONTRL SUBST-7TH |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

**DETAILS:**    Arrest #: K06683249

AT TPO DEFT WAS OBSERVED EXCHANGING A SUM OF USC FOR QUANTITY OF HEROIN FROM A
PPREHENDED DEALER IN PUBLIC VIEW DURING A SNUE OPERATION.

**DEFENDANT: CAMACHO, FRANCISCO**    NYSID #:    Arrest #: K06683249

Nick/AKA/Maiden:
Sex: **MALE**
Race: **WHITE HISPANIC**
Age: **53**
Date Of Birth: **04/30/1953**
U.S. Citizen: **YES**
Place Of Birth: **USA**
Need Interpreter: **NO**
Language:
Accent: **NO**
Physical Condition: **APPARENTLY NORMAL**
Drug Used: **OTHER COCAINE**

Height: **5FT 11IN**
Weight: **165**
Eye Color: **BROWN**
Hair Color: **BLACK**
Hair Length: **NORMAL**
Hair Style: **CURLY/WAVY**
Skin Tone: **MEDIUM**
Complexion: **CLEAR**

Soc.Security #: 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
Occupation: **NONE**
Lic/Permit Type:
Lic/Permit No:

Order Of Protection: **NO**
Issuing Court:
Docket #:
Expiration Date:
Relation to Victim: **UNKNOWN/NONE**
Living together: **NO**
Can be Identified: **NO**

Gang Affiliation: **NO**
Name:
Identifiers:

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 350 HEMPSTEAD AVENUE | WEST HEMPSTEAD | NEW YORK | | | 000 |

Phone # and E-Mail Address:

N.Y.C.H.A. Resident: NO  N.Y.C. Housing Employee: NO  On Duty:
Development:    N.Y.C. Transit Employee: NO

Physical Force: **NONE**
Weapon Used/Possed: **NONE**
Non-Firearm Weapon:
Other Weapon Description:

Gun:
Make:
Color:
Caliber:
Type:
Discharged: **NO**

Used Transit System: **NO**
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | FOOTWEAR - WORK BOOTS - BLUE |
| CLOTHING | ACCESSORIES - JEANS - BLUE |
| CLOTHING | OUTERWEAR - WAIST LENGTH JACKET - UNKNOWN COLOR |
| CLOTHING | HEADGEAR - UNK - UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |

NYC30

EXHIBIT C

1    CRIMINAL COURT OF THE STATE OF NEW YORK

2    COUNTY OF KINGS:  PART -- AR3

3    ----------------------------------------X

4    THE PEOPLE OF THE STATE OF NEW YORK,

5

6                    -against-
                                                    Docket #
7                                                   2006KN074859
     FRANCISCO CAMACHO,

8                              Defendant.

9

10   ----------------------------------------X

11                          October 27, 2006

12                          120 Schermerhorn Street
13                          Brooklyn, New York  11201

14
     B E F O R E:          HONORABLE RUTH SMITH
15                         CRIMINAL COURT JUDGE.

16
     A P P E A R A N C E S:
17

18                         CHARLES J. HYNES, ESQ.
                           District Attorney - Kings
19                         BY: A.D.A. GAZER, ESQ.
                           Assistant District Attorney
20

21                         LEGAL AID SOCIETY
                           111 Livingston Street
22                         Brooklyn, New York  11201
                           BY: TRISHA PAGONE, ESQ.
23                         Attorney for Defendant.

24
                           SHARI F. EBANKS
25                         OFFICIAL COURT REPORTER

Proceeding        2

1           COURT OFFICER:  Calling Francisco Camacho;

2    Step out.  Docket number 2006KN074858, charged with

3    220.03 and also Cross-County warrant, 95Q026309

4    Charged with VTL 511.2, AP5 in Queens County.

5    Also, summons warrant 128 for an open container.

6           MS. RAGONE: I just want the Court to be

7    aware that he's been in since the 11th, so I know

8    there is an issue about the Nassau County warrant.

9    He's been already held for all of this time.  He's

10   been held in the back as a medical.  He has a back

11   brace.  He broke a vertebrae and that's why he was

12   in the hospital for all of this time and I would

13   not like for him to spend another night in there.

14           THE COURT: The problem is, he has a

15   Nassau County warrant and we are trying to figure

16   out what's going on with that warrant.

17           MS. RAGONE: Yes, I understand that.  If the

18   police had known about it since he was arrested and

19   fingerprinted him on October the 11th---it's unclear

20   to me why this is happening---

21           THE COURT: All right.  People?

22           MR. GAZER: People's offer on this is

23   a Violation and Conditional Discharge.

24           THE DEFENDANT: Oh my God.  I'll not be able

25   to take the pain.

Proceedings    3

1            MS. RAGONE: Judge, on the instant matter,
2    my client authorized me to enter a plea of guilty to
3    240.20, a Violation and not a crime in full
4    satisfaction of the docket with the understanding
5    that the sentence of the Court is a Conditional
6    Discharge---Waive prosecution by information and
7    stand ready for sentencing.
8            THE COURT: Are you seeking Civil Judgment?
9            MS. RAGONE: Yes.
10           THE COURT: All right.  Sir, your attorney
11   has indicated that on this case, your new case, that
12   you wish to enter a plea of guilty to Disorderly
13   Conduct, which is a Violation and not a crime.  Is
14   that what you want to do?
15           THE DEFENDANT: Yes.
16           THE COURT: This is a Violation and not a
17   crime, do you understand?
18           THE DEFENDANT: Yes.
19           THE COURT: Have you had a chance to speak
20   to your lawyer about the case?
21           THE DEFENDANT: Yes.
22           THE COURT: The promise is a Conditional
23   Discharge, whereby you have to abide by a law abiding
24   life and Civil Judgment will be entered on the
25   surcharges---other than that, are there any other

Proceedings    4

1    promises that have been made to you?

2            THE DEFENDANT: No.

3            THE COURT: Has anyone forced you to take

4    this plea?

5            THE DEFENDANT: No.

6            THE COURT: By pleading guilty you give up

7    various right, including your right to a trial, your

8    right to have the People prove the case against you

9    beyond a reasonable doubt.  You also give up your

10   right to remain silent.  You understand you are

11   giving up those rights when you plead guilty?

12           THE DEFENDANT: Yes.

13           THE COURT: The plea is acceptable.

14   Sentence imposed is a Conditional Discharge, whereby

15   you are to lead a law abiding life.  Civil Judgment

16   is entered.

17       With respect to the summons, open container---

18   People do you have anything to add?

19           MR. GAZER: Unfortunately nothing to add.

20           THE COURT: All right.  That's dismissed

21   on facial insufficiency.  As to the Queens case,

22

23

24

25

Proceedings    5

1    $1 Bail set---AP5 Queens Criminal Court,

2    October 30th. As to the warrant matter, again, the

3    Police department will have to straighten that out.

4        All right. That's ROR on the Queens matter.

5                    ***********

6    CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF
     PROCEEDINGS.

7

8                    SHARI F. EBANKS
                    OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NYC62